UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
PAUL ANTHONY RAMIREZ,                                     :
                              Plaintiff,                  :
                                                          :    12 Civ. 8710 (JPO)
          -v-                                             :
                                                          :    OPINION AND ORDER
ZEESHAN ELLAHI,                                           :
                              Defendant.                  :
                                                          :
----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

Plaintiff Paul Anthony Ramirez brings this action for negligence against Defendant Zeeshan Ellahi based upon an alleged motor vehicle-pedestrian accident. Trial is scheduled for June 2, 2014. Ellahi has moved to bifurcate the liability and damages phases pursuant to Federal Rule of Civil Procedure 42(b). For the reasons stated below, his motion is denied.

## I.   Background

### A.   Factual Background

The following facts are drawn from Ramirez and Ellahi's depositions. (Dkt. No. 19, Exs. E & F ("Def. Tr."); Dkt. No. 22, Ex. A.)

On October 7, 2012, sometime around midnight, Ramirez and his friend Steven Chen entered Ellahi's taxi cab after a Jay-Z concert at Barclays Center in Brooklyn, New York. Ramirez and Chen instructed Ellahi that there would be two stops—Chen's residence in Dumbo, followed by Ramirez's girlfriend's residence in the Bronx. Ramirez was seated behind Ellahi and Chen was seated in the rear passenger-side seat. Ramirez and Chen had no conversations with Ellahi until they arrived at Chen's home and Ellahi asked whether they would be paying for the first stop or paying the full fare at the end. Chen paid for the first stop and exited the cab,

1

and Ellahi restarted the meter. Ramirez then explained to Ellahi his next destination and his opinion about the best route. The parties dispute what happened once the cab entered the Bronx.

### 1. Ramirez's Version of Events

The following is Ramirez's version of the subsequent events. Several blocks after they reached the Bronx, Ellahi told Ramirez that he needed to pay the outstanding fare of approximately $40 immediately because there was a problem with the meter and he needed to restart the vehicle to restart the meter. Ramirez asked Ellahi why this was necessary and Ellahi was unable to explain, so Ramirez told him that he would not pay any amount until they reached his destination, which was still some 60 blocks away. Ellahi then threatened to take Ramirez back to Brooklyn and made a U-turn at 140th Street and Grand Concourse. When the car stopped momentarily, Ramirez opened the rear driver-side door and said he was getting out and calling the cops. When he opened the door—his feet still in the vehicle—Ellahi accelerated and stopped three times. The third time, Ramirez was thrown from the vehicle. When he hit the concrete, he heard a snap, which was later revealed to be a fracture in his right ankle. After some time, he stood up and felt immense pain in his right leg. He tried to make his way to the sidewalk, hobbling, as Ellahi screamed from the vehicle that the police were on their way.

Within several minutes, five police officers arrived in two vehicles. They approached Ramirez and he gave them his ID and told them what happened. He also asked them to help him get medical attention; they offered to take him to Lincoln Medical Center but he declined because he did not have medical insurance. Ramirez had $24 in cash and a debit and credit card. When the officers attempted to settle the dispute by requiring Ramirez to pay the fare, he said he did not have any money on his debit card. The officers took the $24 and asked Ellahi if it was acceptable. Ellahi responded that it was and left, as did the police. Ramirez then called his girlfriend and she came to pick him up.

### 2. Ellahi's Version of Events

The following is Ellahi's version of events. Shortly after they reached the Bronx, Ellahi stopped at a traffic light. There was no problem with his meter and he did not prematurely demand payment. Ramirez suddenly opened the door and ran away. As Ramirez opened the door, Ellahi shouted that he needed to pay. Ellahi yelled to the fleeing Ramirez that he would call the police; he then called them and said that he had a passenger who was attempting to run away without paying his fare. Ramirez ran to another cab, but when he tried to get in it started to move and he fell. Ramirez quickly got back up and ran to try and catch other cabs that were driving by.

The police did not show up for several minutes. When Ramirez got into another cab, Ellahi told the driver not to take Ramirez because he did not pay his fare and the police were on their way. The driver of that vehicle was trying to leave but could not because Ellahi had stopped his car in front of him. Ramirez then got out of that vehicle and it drove off. The police showed up at about the same time. Ellahi told the police what had happened and an officer—an unidentified Asian man—asked Ramirez for money and Ramirez gave him a credit or debit card. The officer or Ellahi swiped the card and it was declined. The officer asked Ramirez if he had any other way of paying, and Ramirez searched his pockets and found $21. The officer took that money and gave it to Ellahi, who accepted it and drove away. The police drove away at the same time and Ellahi did not see what happened to Ramirez.

### B. Procedural Background

Ramirez filed a complaint in New York State Supreme Court, Bronx County, on November 2, 2012. (Dkt. No. 1 ("Removal") ¶ 1.) Ellahi removed the action to federal court on November 30 and answered on December 5, 2012. (*Id.*; Dkt. No. 2.) Following discovery, trial

was scheduled for April 7, 2014 and thereafter adjourned to June 2, 2014.  Ellahi's motion for bifurcation was filed on March 3, 2014.  (Dkt. No. 19.)

## II.     Legal Standard

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  The decision to bifurcate rests within the sound discretion of the court.  *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (citation omitted).  However, bifurcation remains the exception rather than the rule, and the moving party bears the burden of demonstrating that it is warranted.  *Agron v. Trustees of Columbia Univ. in City of N.Y.*, 88 Civ. 6294 (MJL), 1997 WL 399667, *1 (S.D.N.Y. July 15, 1997).

## III.    Discussion

The parties dispute whether bifurcation is appropriate in light of Rule 42(b)'s concern with preventing prejudice and promoting judicial economy.  The Court addresses each in turn.

### A.     Prejudice

Ellahi argues that bifurcation is necessary to prevent prejudice because evidence related to Ramirez's injury could lead the jury to improperly focus upon the extent of the injury rather than liability.  Ramirez opposes bifurcation because testimony about the condition of his ankle is necessary to undermine Ellahi's version of events.

The Court agrees that evidence regarding the extent of Ramirez's injury is critical to the determination of liability.  Bifurcation is not appropriate where the issues of liability and damages are intertwined.  *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996).  The facts in this case are sharply disputed and turn largely upon the credibility of the parties.  Ramirez claims that he was thrown from Ellahi's vehicle and could move only by limping.  Ellahi claims

that when Ramirez tried to get into another vehicle, he "fell and got right back up" and continued to run after other cabs. (Def. Tr. 50:13-16.) Objective medical evidence may aid the jury in determining which version of events is credible.[1] Ellahi contends that Ramirez can simply testify to the extent of his injuries. This suggestion ignores the potentially significant probative value of non-party testimony in what is essentially a 'he-said, he-said' case.

In contrast, the likelihood of prejudice to Ellahi if the trial is not bifurcated is minimal. This is not a case where Ramirez's injuries were grave or are realistically likely to evoke sympathy from the jury. Ramirez suffered a non-life-changing fracture and underwent surgery. The cases cited by Ellahi where courts bifurcated trial have generally involved evidence that created a genuine risk of prejudice or confusion. *See, e.g.*, *Zofcin v. Dean*, 144 F.R.D. 203, 205 (S.D.N.Y. 1992) (plaintiff sought to "offer detailed evidence of extreme pain and suffering, including burning flesh and screams of pain"); *Lagudi v. Long Island R.R.*, 775 F. Supp. 73, 74-75 (E.D.N.Y. 1992) (injuries from three separate incidents created risk of confusion). Ellahi also has not identified what evidence regarding Ramirez's injury would be prejudicial to the determination of liability. To the extent that any such evidence arises, he can request an instruction to the jury.

B.   **Judicial Economy**

Ellahi also asserts that bifurcation will save the parties and court time and money, because once liability is determined either Ellahi will prevail and damages will become irrelevant, or Ramirez will prevail and settlement will be likely. Ramirez counters that settlement is not a realistic possibility. Even assuming that settlement may be forthcoming once

---

[1] Ramirez also notes that if the trial were bifurcated, he would have to pay his testifying surgeon a second fee and that "according to the treating surgeon's coordinator, there is no avenue for securing the testimony of this physician on two dates fairly close to one another so that one jury can be used for both a liability trial and a damages trial." (Dkt. No. 22 ¶ 10.)

liability is determined, the overlap between the evidence of liability and damages suggests that a single trial will be more efficient than a bifurcated one.  Moreover, the parties have represented that trial of all issues will likely last just one day, and at most two.  Ellahi admits that "the damages issues are rather simple and straight forward" (Dkt. No. 21 at 5), and Ramirez has represented that he will call the same treating surgeon to testify as to liability and damages.  Under such circumstances, it is difficult to see how trying damages separately will save, rather than undermine, judicial economy.

### IV.   Conclusion

For the foregoing reasons, it is hereby ORDERED that Ellahi's motion for bifurcation (Docket Entry No. 19) is DENIED.

SO ORDERED.

Dated: New York, New York
April 21, 2014

_____
J. PAUL OETKEN
United States District Judge